UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDEL SOLANO,<br><br>             Plaintiff<br><br>     -and-<br><br>SERVICE EMPLOYEES INT'L UNION, LOCAL 615,<br><br>             Intervenor-Plaintiff<br><br>     v.<br><br>ALLIEDBARTON, INC.; ALLIED SECURITY HOLDINGS, LLC; THE BLACKSTONE GROUP, L.P.; CHARLES CLARKE; ROBERT DICKSON; EDWARD SILVY; and DAVID SILVY,<br><br>             Defendants | Civil Action<br>09-cv-10587-GAO<br><br>Leave to File Granted<br>July 23, 2009 |

### **INTERVENOR-PLAINTIFF SEIU LOCAL 615's OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**I.   INTRODUCTION**

Intervenor-Plaintiff SEIU Local 615 ("Local 615" or "the Union") opposes Defendants' motion to dismiss the discrimination lawsuit brought by Plaintiff Fidel Solano ("Solano"). Defendants incorrectly argue that the collective bargaining agreement ("CBA") between Local 615 and AlliedBarton Security Services, LLC ("AlliedBarton" or "the Employer") bars a bargaining unit member such as Solano from vindicating his individual statutory rights through a judicial forum.

As a threshold matter, this Court should stay its hand in deciding this issue because the Employer's contention regarding the terms and conditions of Solano's employment pursuant to the CBA is inconsistent with the understanding of the parties in entering into the CBA, and the Employer is bound to have that contract interpretation question resolved by an arbitrator under the CBA's grievance and arbitration process. The Union has a contract grievance pending in arbitration, alleging that the CBA does not require employees such as Solano, to waive their individual statutory rights. As in other contract interpretation grievances, the Union intends to show that the Union and Employer reached no such agreement. Because it has been long understood that the interpretation of a CBA is a responsibility exclusively reserved to an arbitrator, this Court should stay its hand on the motion to dismiss to allow an arbitrator to interpret the CBA to determine whether the Union and Employer indeed agreed that the grievance and arbitration procedure of the CBA would be the sole and exclusive remedy for employees represented by the CBA.

Even if the Court accepts the Employer's contention that the Employer and Union agreed that individual employees' sole and exclusive remedy to vindicate individual statutory rights is through the grievance procedure, the Court should deny the motion to dismiss. Under the requirements of <u>Wright v. Universal Maritime Service Corp.</u>, 525 U.S. 70 (1998) (reiterated in <u>14 Penn Plaza, LLC v. Pyett</u>, 129 S.Ct. 1456 (2009)), the CBA does not contain a clear and unmistakable waiver of an individual's right to bring a discrimination lawsuit in court, and therefore cannot be enforceable against an individual employee.

Finally, the purported waiver here is unenforceable as a waiver of substantive statutory rights for two reasons. First, on an issue remanded to the District Court in <u>14 Penn Plaza</u> for further fact-finding, the Court should find here that where the Union controls the grievance and

arbitration machinery, and can block a member's access to that machinery, such a waiver curtails employees' substantive rights. Second, even if this Court concludes that Solano somehow has the right to arbitrate his statutory claims without limitation by the Union, such a waiver is nonetheless unenforceable because the procedures agreed to by the parties for arbitration, which were designed to handle only labor disputes, will not sufficiently vindicate Solano's individual right to challenge the discrimination he alleges he suffered, as is required by <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20 (1991).

## II.    FACTS[1]

Since July 1, 2007, and continuing to the present, AlliedBarton and Local 615 have been parties to a CBA which governed the terms and conditions of Solano's employment. Action for Declaratory Judgment, ¶ 6; <u>see also</u> <u>id.</u>, Exh. A, Preamble to CBA (the CBA is an "[a]greement by and between AlliedBarton Security Services at Harvard University, their successor and assigns (hereinafter called the "Employer") and Service Employees International Union, Local 615 (hereinafter called the "Union")). The relevant provisions here include one prohibiting unlawful discrimination,[2] a provision prohibiting discipline without just cause,[3] and grievance and arbitration provisions.[4]

---

[1] The facts in this paragraph are drawn from the Plaintiff's complaint and Intervenor-Plaintiff's Action for Declaratory Judgment, and all reasonable inferences that may be drawn therefrom. The facts have also been updated to reflect developments following June 30, 2009, the date on which the Union submitted its proposed Opposition to the Court. <u>See</u> Action for Declaratory Judgment, ¶¶ 32-35.

[2] Article 2 (Equal Opportunity, No Discrimination) states, <u>inter alia</u>:

> The Parties actively affirm their intent and desire to comply fully with their obligations under existing applicable laws relating to discrimination on the basis of race, color, religion, country of national origin, sex, age, sexual orientation, handicap or veteran status, and hereby agree to incorporate these obligations as a part of this Agreement.
> There shall be no discrimination against any present or future Employee as prescribed by State and/or Federal Law.

[3] <u>See</u> Act. for Dec. Judg., ¶ 8.

[4] <u>See</u> Act. for Dec. Judg., ¶ 9, Exh. A., Articles 31 (Grievance) and 32 (Arbitration) (relevant language quoted <u>infra</u>).

3

Solano was a security officer for AlliedBarton, and was assigned to a post at Harvard University's medical school library. Complaint, ¶ 32. On Feb. 25, 2008, Solano began feeling ill, suffering shortness of breath, dizziness and a headache. Id. at ¶ 32.1. In response to these symptoms, Solano took five medications. Id. at ¶ 32.1.1. The ingestion of these medications caused Solano to become temporarily incapacitated. Id. at ¶ 33.4-33.6. AlliedBarton fired Solano because of this incident. Id. at ¶ 34.2.

Solano and the Union filed a grievance pursuant to the collective bargaining agreement. Complaint, at ¶ 36; Act. for Dec. Judg., at ¶ 16. The grievance alleged only discharge without just cause, and included no allegations of discrimination. Act. for Dec. Judg., ¶¶ 16-17. The grievance was not resolved, and the Union and Employer proceeded to arbitrate the grievance on Oct. 27, 2008. Id. at ¶ 18. The Union and Employer jointly submitted the following issue to the arbitrator: "Did the Employer terminate Fidel Solano for just cause on February 28, 2008? If not, what shall be the remedy?" Id. at ¶ 19. Neither the Union nor the Employer submitted to arbitration any question of discrimination regarding Solano. Id. at ¶ 20. On Feb. 6, 2009, the Arbitrator issued a written award, declaring that the Employer did not have just cause to fire Solano, and ordered Solano's reinstatement with backpay. Id. at ¶ 21.[5]

On or about February 24, 2009, Solano filed a lawsuit in Suffolk Superior Court alleging, inter alia, age and disability discrimination against the Employer, and that action was removed to this Court on April 15, 2009. Id. at ¶ 24-25. On April 1, 2009, the Supreme Court issued its ruling in 14 Penn Plaza, supra. The Employer, relying on its reading of that decision, has moved to dismiss Solano's lawsuit, claiming for the first time that the parties agreed that Solano's sole

---

[5] In a truly ironical twist, given the Employer's position here, the Employer has failed to comply with the Arbitrator's decision. Id. at ¶ 22.

4

and exclusive remedy for vindicating his individual statutory rights is through the grievance and arbitration procedure under the CBA. Id. at ¶ 26.

On June 26, 2009, the Union filed a grievance alleging the Employer is violating the CBA by advancing in court the argument that the CBA requires individual members to arbitrate their claims. Act. for Dec. Judg., ¶ 32. The grievance was not resolved, and the Union filed for arbitration with the American Arbitration Association ("AAA") on July 14, 2009. Id. ¶ 33. The grievance is now pending before the AAA. Id. ¶ 34.

**III.   ARGUMENT**

Although it is now lawful in certain circumstances for a collective bargaining agreement to require individual bargaining unit members to arbitrate statutory claims of discrimination, see 14 Penn Plaza, LLC v. Pyett, 129 S.Ct. 1456 (2009), such waivers of individual rights to a judicial forum still will not be enforced unless they are presented in clear and unmistakable terms, and the agreed-upon arbitration procedure must still sufficiently vindicate an employee's right to challenge allegedly unlawful discrimination.

The clause here falls short of the Supreme Court's "clear and unmistakable" standard as set forth in Wright v. Universal Maritime Service Corp., 525 U.S. 70 (1998). Furthermore, even if the waiver were construed as clear and unmistakable, the Union has the ability to block an employee's access to the grievance and arbitration machinery altogether, subject only to its duty of fair representation, under which the Union has broad discretion to decline to submit even meritorious claims. In addition, this particular clause is unenforceable against an individual, because it effectively deprives the Plaintiff of his right to have his claim heard in a forum that allows him to challenge the discrimination he alleges he suffered, as required by Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991).

5

In any event, the threshold question of what the Union and the Employer agreed upon should be decided by an arbitrator, and not this Court. The Union has filed a grievance, which is now pending in arbitration, and which will result in an arbitrator issuing a decision on the question of what the Employer and Union actually agreed upon. The Court should stay its hand, and not dismiss this case on waiver grounds before arbitral determination of the meaning of the CBA.

A. **THE EMPLOYER IS BOUND BY ITS AGREEMENT TO SUBMIT TO ARBITRATION DISPUTES REGARDING THE TERMS AND CONDITIONS OF EMPLOYMENT OF BARGAINING UNIT MEMBERS, INCLUDING THE QUESTION OF WHETHER THE EMPLOYER AND THE UNION AGREED THAT INDIVIDUALS MUST SUBMIT STATUTORY CLAIMS OF DISCRIMINATION TO ARBITRATION**

Implicit in the Motion to Dismiss is AlliedBarton's claim that AlliedBarton and Local 615 agreed that the grievance and arbitration provisions of the CBA provide that an employee's sole and exclusive remedy for vindicating individual statutory claims was through the CBA's grievance and arbitration procedure. This is a contract interpretation question upon which the Union has brought a grievance that is now pending in arbitration. It is well settled that federal judges should refrain from engaging in such interpretation, even where the Court is confident about the meaning of the CBA. See, e.g., Int'l B'hood of Elec. Workers, Local 1228, AFL-CIO v. WNEV-TV, N.E. Telev. Corp., 778 F.2d 46, 47 (1st Cir. 1985) (federal court "over-extended itself in considering and deciding the merits of the underlying dispute" raised under a CBA). This Court should not allow the Employer to seek an interpretation of this question here, and should instead defer to the arbitral resolution of the meaning of the CBA as it would in any other contract interpretation dispute.[6]

---

[6] An arbitrator determining the meaning of a disputed contract term would normally consider bargaining history, proposals exchanged between the parties and other extrinsic evidence. See Frank Elkouri and Edna Elkouri, How Arbitration Works 427-84 (6th ed. 2003). At an arbitration here, Local 615 intends to present such bargaining history and contract language proposals, as well as extrinsic evidence showing that at the time the clause was

Conflicts over where authority to interpret a CBA lies typically arise where a union seeks to arbitrate its grievance, and the employer refuses on the ground that the CBA clearly does not support the union's argument, and that any such arbitration would therefore be futile. Then, a federal court, faced with a motion to compel, must set aside its belief in the employer's position, and order arbitration. A federal court

> is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.... <u>The courts, therefore, have no business weighing the merits of the grievance</u>, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.

<u>Steelworkers v. American Mfg. Co.</u>, 363 U.S. 564, 567-568 (1960) (emphasis added).

This case arises in a somewhat different posture, but the outcome should be no different. The Union has brought to arbitration a grievance against the Employer, alleging that it is violating the CBA by advancing its argument that the CBA requires the arbitration of individual claims of statutory discrimination. The question of whether the Union and the Employer agreed that a bargaining unit employee's sole and exclusive remedy for vindicating his statutory rights would be the grievance and arbitration procedures under the CBA – like any other question regarding any term or condition of employment – is ultimately a question of contract interpretation. If this court grants the Employer's motion to dismiss based on the Employer's claims as to the meaning of its agreement with the Union, the effect would be to deny the Union its right to have that question decided by an arbitrator.[7]

---

adopted such waivers were unenforceable in this and virtually every other circuit, and that the Union had no intention to agree to an unlawful waiver. The state of the law forbade labor unions from waiving the rights of individual members to waive statutory claims in court. <u>See</u> e.g. <u>Air Line Pilots Ass'n, Intern. v. Northwest Airlines, Inc.</u>, 199 F.3d 477, 484 (D.C. Cir. 1999) (surveying state of the law).

[7] This arbitral question of interpretation will require the arbitrator to determine whether the parties intended to incorporate the statutes into the CBA <u>in toto</u>, and will also require the arbitrator to determine whether the arbitration agreement is accessible by an individual employee.

Therefore, the Court should deny the Motion to Dismiss and allow an arbitrator to interpret the collective bargaining agreement and determine whether the Union and Employer agreed that individuals were barred from asserting their statutory rights in a judicial forum. If the arbitrator finds no such agreement between the Employer and the Union, then Defendants will be precluded by the CBA from raising this argument in this Court because the decision "shall be final and binding on the parties," and the Employer is a party to the CBA. Article 32, pg. 19. If the arbitrator does find that the Union and Employer intended to make the CBA the sole and exclusive remedy for an individual employee to vindicate his statutory rights, the Court could then proceed to determine whether such an agreement between the Union and Employer meets the legal requirements for such a waiver to be enforceable against an employee.[8]

### B. THE CBA BETWEEN LOCAL 615 AND ALLIEDBARTON DOES NOT CLEARLY AND UNMISTAKABLY REQUIRE BARGAINING UNIT EMPLOYEES TO SUBMIT THEIR STATUTORY CLAIMS OF DISCRIMINATION TO ARBITRATION

If this Court declines to stay its hand and allow an arbitrator to determine the meaning of the CBA, the Union asks this Court to find the CBA does not waive Solano's right to litigate his discrimination claims. Following the Supreme Court's April decision in 14 Penn Plaza, LLC v. Pyett, it is clear that a collective bargaining agreement between a union and an employer that "clearly and unmistakably requires union members to arbitrate [statutory claims of discrimination] is enforceable as a matter of federal law." 129 S.Ct. 1456 (2009); see also Wright v. Universal Maritime Service Corp., 525 U.S. 70 (1998) (articulating the "clear and unmistakable" standard). However, in no way did the Supreme Court in 14 Penn Plaza modify its definition of "clear and unmistakable" as set forth in Wright, and Wright therefore remains the

---

[8] If the Court declines to stay its hand, it would need to determine in the first instance whether the Union and Employer agreed that the grievance and arbitration process would bar individual employees' right to a judicial forum. This is a factual determination, not appropriately resolved on a motion to dismiss.

applicable legal standard to determine the clarity of the waiver. Because the purported waiver here is not clear and unmistakable, Defendants' Motion to Dismiss should be denied. The clause at issue in 14 Penn Plaza is an example of a clear and unmistakable waiver. It read:

> § 30 NO DISCRIMINATION. There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any other characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code, ... or any other similar laws, rules, or regulations. <u>All such claims shall be subject to the grievance and arbitration procedures</u> (Articles V and VI) <u>as the</u> <u>sole and exclusive remedy for violations</u>. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

Quoted at 129 S.Ct. at 1461 (emphasis added).[9] This clause lists the statutes at issue and makes clear that the grievance and arbitration procedures are "the sole and exclusive remedy for violations." See O'Brien v. Town of Agawam, 350 F.3d 279, 286 (1st Cir. 2003) (arbitration provision without even "a single reference ... to arbitration of statutory claims, let alone a clear and unmistakable waiver of a judicial forum for such claims" does not meet the requirement for a clear and unmistakable waiver).

The First Circuit's approach in O'Brien to the question of waiver under Wright is consistent with its handling of waivers of statutory rights in other contexts. "[T]he law of this circuit is that 'a waiver [of statutory rights] should be express, and that a mere inference, no matter how strong, should be insufficient.'" Comm. Workers of Am., AFL-CIO, Local 1051 v. National Labor Relations Board, 644 F.2d 923 (1st Cir. 1981) (quoting NLRB v. Perkins Machine Co., 326 F.2d 488, 489 (1st Cir. 1964) and cited with approval in Union Builders, Inc. v. NLRB, 68 F.3d 520 (1st Cir. 1995)).

---

[9] 14 Penn Plaza did not pass directly on whether this language constituted a clear and unmistakable waiver, noting instead that each court in the proceedings below held that it was, and that the plaintiffs had conceded the waiver's clarity at each prior step of litigation. 129 S.Ct. at 1473-74. There is little reason to doubt the clarity here.

Unlike 14 Penn Plaza, but as in O'Brien, the CBA here does not make explicit the assertion that it would provide the sole and exclusive remedy for statutory rights. Accordingly, under Wright and its First Circuit progeny, the CBA does not include a clear and unmistakable waiver of employees' right to a judicial forum. Defendants' reliance on Rogers v. New York University, 220 F.3d 73 (2d Cir. 2000), and Safrit v. Cone Mills Corp., 248 F.3d 306, 308 (4th Cir. 2001), does not advance their efforts to dismiss this case. Not only are those cases from outside of this Circuit, but even accepting them as providing the appropriate standard for a waiver here, Defendants' argument fails.

In Rogers, the court explained that even where an arbitration clause does not include an explicit agreement stating that individual statutory rights must be arbitrated, "waiver may be sufficiently clear and unmistakable when the CBA contains an explicit incorporation of the statutory anti-discrimination requirements in addition to a broad and general arbitration clause." 220 F.3d at 76 (emphasis added). It is the incorporation theory upon which AlliedBarton relies, but even under Rogers, the Employer's argument fails because Article 2 of the AlliedBarton CBA (Equal Opportunity, No Discrimination) fails to sufficiently incorporate the statutes into the CBA. While Article 2 does state generally that the "Parties actively affirm their intent and desire to comply fully with their obligations under existing applicable laws relating to discrimination on the basis of race, color, religion, country of national origin, sex, age, sexual orientation, handicap or veteran status, and hereby agree to incorporate these obligations as a part of this Agreement," CBA, pg. 1, the clause does not "identify[] the antidiscrimination statutes by name or citation," which is a prerequisite to a finding of a clear and unmistakable waiver. Rogers, 220 F.3d at 76 (emphasis added); see also Kennedy v. Superior Printing Co., 215 F.3d

650, 653-54 (6th Cir. 2000) (no clear and unmistakable waiver where statutory provisions subject to purported waived are not expressly enumerated in CBA).

Like Rogers, the court in Paris v. Dallas Airmotive, Inc., 130 F.Supp.2d 844, 847 (N.D.Tex. 2001), found that the CBA there did not include a clear and unmistakable waiver because "incorporation requires that the collective bargaining agreement identify the statute by name or citation." The clause in Paris stated: "The Company and the Union agree they will comply with all statutes and laws prohibiting discrimination against any employee because of … age [or] disability. The parties likewise agree that any adopted and amended governmental statutes and regulations pertaining to nondiscrimination applicable to the Company … shall be adopted as part of the Agreement and shall have the same force and effect as if actually written herein." Id. at 846 (emphasis added). "What the court finds troublesome is that there is no clear and explicit language in the collective bargaining agreement that informs employees of what rights or remedies they have under Title VII and that they are knowingly giving up their right to have any alleged violation of Title VII heard in a federal judicial forum." Id. at 846. The contract language in Paris is remarkably similar to that in the AlliedBarton CBA, where the parties agreed to comply with "all statutes and laws prohibiting discrimination," but did so without any reference to named statutes. Like Paris, here the nondiscrimination clause contains no reference to named statutes and thus no clear and unmistakable waiver.

In a post-14 Penn Plaza case, a district court in Chicago concluded that the "clear and unmistakable" requirement is not met where the "arbitration and anti-discrimination clauses are distinct." St. Aubin v. Unilever HPC NA, 2009 WL 1871679, *4 (N.D.Ill. 2009) (absent valid waiver, labor arbitration decision does not preclude subsequent FMLA suit).[10] In that case, similar to the instant matter, the "anti-discrimination clause is part of the CBA's preamble; it

---

[10] This case came to the Union's attention after June 30, the date on which it filed its proposed Opposition.

11

does not refer to arbitration. The CBA requires arbitration 'only' of disputes about the interpretation or application of the CBA's provisions and violations of the CBA. The arbitration clause does not refer to the anti-discrimination provision." Id. Thus, St Aubin does not even go as far as Rogers, in that it rejects its "incorporation" approach. Defendants' argument thus fails under both Rogers incorporation (for failure to name the purportedly incorporated statutes) and under St. Aubin (because the arbitration clause does not explicitly refer to the non-discrimination provisions).

The AlliedBarton contract also merely incorporates the "obligations" of the unnamed discrimination statutes into the CBA, and does not incorporate the statutes themselves. "[W]here a party seeks to base its claim of waiver of the right to a federal forum on a claim of 'explicit incorporation' … of the relevant federal antidiscrimination statute into the terms of the CBA, a simple agreement not to engage in acts violative of that statute . . .  will not suffice. Rather, the parties must make 'unmistakably clear' their intent to incorporate in their entirety the discrimination statutes at issue." Birch v. The Pepsi Bottling Group, Inc., 207 F.Supp.2d 376, 380-82 (D.Md. 2002) (emphasis added). In Birch, the CBA included a specific provision that "the Company shall not participate in any act of discrimination prohibited by law," and that "[b]oth parties acknowledge their respective obligations under Title VII of the Civil Rights Act and agree that neither will discriminate against any employee or applicant for employment because of …age [or] disability…" Nonetheless, the court did not find a clear and unmistakable waiver in this language. Id.; see also Quint v. A.E. Staley Mfg. Co., 172 F.3d 1, 9 (1st Cir. 1999) (no clear and unmistakable waiver where CBA did not explicitly mention[] employee rights under the ADA or any other federal anti-discrimination statute"); Moore v. United Parcel Service, 474 F.Supp.2d 882, 894 (E.D. Mich. 2007) (that CBA detailed the FMLA's

requirements as contract requirements, brigaded with a broad arbitration agreement of contract grievances, did not create a clear an unmistakable waiver of a judicial forum); Bratten v. SSI Servs., Inc., 185 F.3d 625, 627-28, 631 (6th Cir. 1999) (arbitration clause unenforceable because "compliance with the ADA was not an express contractual commitment"); Shipkevich v. Staten Island Univ. Hosp., 2009 WL 1706590 (E.D.N.Y. 2009) (arbitration not mandatory, even under 14 Penn Plaza, where non-discrimination statutes not included in CBA).

Similarly, Safrit v. Cone Mills Corp., 248 F.3d 306, 308 (4th Cir. 2001), on which Defendants additionally rely, also does not advance their efforts to dismiss. In Safrit, the CBA explicitly identified Title VII, and explicitly stated that allegations that Title VII was violated must be arbitrated. The CBA here includes no such explicit language.

The waiver in the AlliedBarton contract does not clear and unmistakably waive a bargaining unit member's right to a judicial forum. Therefore, this Court should deny the Defendants' Motion to Dismiss.

C. **EVEN IF THIS COURT WERE TO FIND A CLEAR AND UNMISTAKABLE WAIVER, THE ARBITRATION CLAUSE WAIVES SUBSTANTIVE RIGHTS AND ACCORDINGLY IS UNENFORCEABLE**

While the presence of a clear and unmistakable waiver in the CBA is a necessary condition for this Court to order dismissal, it is not sufficient. Not only must a CBA present a waiver in clear and unmistakable terms, but "an arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and accessible alternative forum." Shankle v. B-G Maintenance Mgt. of Colo., Inc., 163 F.3d 1230, 1234 (10th Cir. 1999), relying on Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991). While the Supreme Court certainly authorized mandatory arbitration of individual statutory claims of discrimination, "[o]bviously, Gilmer[, supra,] cannot be read as holding that an

13

arbitration agreement is enforceable no matter what rights it waives or what burdens it imposes. Such a holding would be fundamentally at odds with our understanding of the rights accorded to persons protected by public statutes like the ADEA and Title VII." Cole v. Burns Intern. Sec. Services, 105 F.3d 1465 (D.C. Cir. 1997). Defendants did not address this dispositive issue, and it is fatal to their Motion to Dismiss.

According to the Supreme Court, only where "the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum" will the non-discrimination statutes "continue to serve both [their] remedial and deterrent function." Gilmer, 500 U.S. at 28, citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985); see also Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1 (1st Cir. 1999). In the arbitration of a statutory claim, an employee "does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" Circuit City Stores, Inc. v. Adams, 532 U.S. 20, 26 (2001). The Supreme Court in 14 Penn Plaza continues to adhere to the requirement that an arbitration agreement may be enforced only where the required arbitral forum sufficiently vindicates statutory rights. See, e.g., 129 S.Ct. at 1474 ("a substantive waiver of federally protected civil rights will not be upheld"). Here, the arbitration provision fails both because Solano's access to the grievance and arbitration process is controlled by the Union and because the procedures adopted by the parties for such arbitrations cannot sufficiently vindicate statutory rights.

      **1.**      **A GRIEVANCE AND ARBITRATION PROCESS CONTROLLED BY THE UNION IS UNENFORCEABLE AS A WAIVER OF INDIVIDUAL STATUTORY RIGHTS**

In 14 Penn Plaza, the employees argued that the CBA operated as a substantive waiver of their statutory rights because it not only precluded a federal lawsuit, but also allowed the Union to block arbitration of the employees' statutory claims. 129 S.Ct. at 1474. The majority found the

facts had not been sufficiently developed below so as to allow it to resolve in the first instance "whether the CBA allows the Union to prevent respondents from 'effectively vindicating' their 'federal statutory rights in the arbitral forum,'" and remanded case for further proceedings. Id. (quoting Green Tree Financial Corp.-Ala. v. Randolph, 531 U.S. 79, 90 (2000)). In so doing, however, the Court acknowledged that "a substantive waiver of federally protected civil rights will not be upheld." Id., citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 and n.19 and Gilmer, 500 U.S. at 29.[11] Justice Souter notes in dissent that 14 Penn Plaza "may have little effect" in light of this unanswered question because it "'is usually the case'" that "the union controls access to and presentation of employees' claims in arbitration." 14 Penn Plaza, 129 S.Ct. at 1481 (Souter, J., dissenting) (quoting McDonald v. West Branch, 466 U.S. 284, 291 (1984)).

In one of the few post-14 Penn Plaza cases decided to date, a court of the Southern District of New York rejected an employer's claim that an individual was barred from bringing his statutory claims in a judicial forum notwithstanding the CBA's clear and unmistakable requirement that individuals must arbitrate statutory claims.[12] The court explained that an arbitration agreement is nonetheless unenforceable where an individual employee is prevented by the Union from arbitrating her claim. Kravar v. Triangle Services, Inc., 2009 WL 1392595 (S.D.N.Y. 2009). The court found the clause at issue in that case was unenforceable because it did not allow the plaintiff to present her claims. Since "the CBA here operated to preclude Ms. Kravar from raising her disability-discrimination claims in any forum[,]…the CBA operated as a waiver over Ms. Kravar's substantive rights, and may not be enforced." Id. (emphasis in

---

[11] See also 14 Penn Plaza at 1469 (clarifying the distinction between the waiver of a judicial forum and the prospective waiver of substantive rights, and noting that "The [Gardner-Denver] Court was correct in concluding that [substantive] federal antidiscrimination rights may not be prospectively waived . . . .")
[12] Indeed, it was the same waiver language at issue in 14 Penn Plaza.

15

original); see also Borrero v. Ruppert Housing Co., Inc., 2009 WL 1748060, *2-3 (S.D.N.Y. 2009) (same, citing Kravar).[13]

As in Kravar, the AlliedBarton CBA's arbitration procedure is not accessible by individual members such as Solano, and is therefore controlled by the Union, allowing the Union to block arbitration subject only to its duty of fair representation. See Vaca v. Sipes, 386 U.S. 171 (1967). Of course, under Vaca and its progeny, the Union can decline to pursue even meritorious grievances, subject only to an extremely broad level of discretion. Id. Furthermore, by its plain terms, arbitration may be invoked under the CBA only if "either party" submits a grievance to arbitration. Art. 32. That individual members are not party to the CBA is made indisputably clear by the very first sentence of the CBA, which defines "Parties to the Agreement" as "AlliedBarton Security Services at Harvard University" and "Service Employees International Union, Local 615." CBA, pg. 1. Here, as in Kravar and Borrero, a clause denying arbitration is unenforceable as a substantive waiver of rights, where a bargaining unit member such as Solano has no power or authority to require arbitration, as that authority is vested with the Union alone.

    **2.**       **THE PROCEDURES ADOPTED BY THE PARTIES UNDER THE ARBITRATION AGREEMENT ARE ALSO INSUFFICIENT TO VINDICATE SUBSTANTIVE STATUTORY RIGHTS**

Article 32 of the CBA specifically requires that all arbitrations shall be conducted in accordance with the labor arbitration rules of the American Arbitration Association. However, those rules are not appropriate for the arbitration of an employment lawsuit such as Solano's.

Even assuming arguendo that Solano could initiate an arbitration,[14] there are numerous other substantial problems with the arbitration agreement in this context. For example, the

---

[13] Borrero came to the Union's attention after June 30, 2009.
[14] In fact, like the CBA, the AAA's Labor Rules do not allow a non-party to initiate an arbitration. See Labor Rules 7 and 9 (both stating that the process may be initiated by a party to the CBA). See Act. for Dec. Judg, Ex. B.

16

CBA's arbitration agreement does not grant Solano the right to be represented by an attorney, or even to present evidence on his behalf. See Labor Rule 20 ("[a]ny party may be presented by counsel or other authorized representative") (emphasis added). The only protection for an affected employee is Labor Rule 22, which allows that "[p]ersons having a direct interest in the arbitration are entitled to attend hearings," but this attendance right does not include the right to counsel or present evidence. Because only parties to arbitration may be represented by counsel or present evidence, the labor arbitration process is unsuitable for individual cases.

Furthermore, the process of appointing a labor arbitrator is controlled by the parties, and the employee is excluded from the selection process. Only the Union and the Employer, as parties, can decline the appointment of a particular individual arbitrator. See Labor Rule 12. Therefore, while the Employer would have the power to strike the name of an arbitrator to whom it objected, Solano would have no such power. See McMullen v. Meijer, Inc., 355 F.3d 486 (6th Cir. 2004) (arbitration agreement unenforceable where employer had exclusive control over selection of arbitrators).

The labor rules do not even guarantee the appointment of an arbitrator with experience in, or an understanding of, employment law. Labor arbitrators are drawn from a pool of arbitrators who need not demonstrate an understanding of employment law, nor need they be attorneys. See Qualification Criteria for Admittance to the AAA Labor Panel, Ex. D to Act. for Dec. Judg. This must be compared to the AAA's Employment Arbitration Rules (see Act. for Dec. Judg., Ex. C), which requires that "arbitrators serving under these rules shall be experienced in the field of employment law." Emp. Rule 12. Labor Rule 12 even allows for the involuntary appointment of an arbitrator if the parties cannot agree on one. This runs the very real risk of the appointment of an arbitrator, from the labor roster (many of whom are not attorneys), with no employment law

background, or even an understanding of discrimination law. Furthermore, because the employer has the unilateral power to narrow the field of arbitrators, it has the power to tilt the selection in its favor. Given that some labor arbitrators are not even attorneys, this could be disastrous for Solano, or any discrimination plaintiff.

Other protections requisite to the enforceability of a valid individual employment dispute arbitration clause are noticeably absent from the AAA's Labor rules – but present, by contrast, in its Employment Rules. For example, Employment Rule 9 allows the arbitrator to order discovery, "by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." No such discovery whatsoever is allowed under the Labor Rules. See Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999) (arbitration agreement unenforceable where employee could not conduct discovery); Armendariz v. Foundation Health Psychcare Services, Inc., 6 P.3d 669, 684 (Cal. 2000) (discrimination plaintiffs are "entitled to discovery [in arbitration] sufficient to adequately arbitrate their statutory claim" of discrimination); Cole, supra (identifying the availability of reasonable discovery as a requisite to the enforcement of an employment arbitration agreement). While the scope of discovery in arbitration need not be as fulsome as that in federal court, see Gilmer, 500 U.S. at 31, the utter unavailability of discovery to Solano here renders the clause unenforceable.

The Employer argues in its Motion to Dismiss that the arbitration process in the CBA is final and binding. However, by the terms of the CBA itself, any award is "final and binding upon the parties," and no others. Thus, even if arbitration were to proceed under the CBA on Solano's discrimination claim, he would still be able to return to court to litigate his claim, because the

Employer explicitly agreed that arbitration would be binding only on itself and the Union. This presents the very real possibility that Solano could be required to litigate his claim twice.

The arbitration provision of the CBA is therefore unenforceable in the individual context. This is hardly a surprise, given that it was not designed to provide a forum for individual claims of statutory discrimination. It was drafted approximately two years before 14 Penn Plaza was decided, when it was broadly understood that a CBA could not lawfully contain such a waiver. See 14 Penn Plaza (Souter, D., dissenting) ("...every Court of Appeals save one [the 4th Circuit] has read our decisions as holding to" the position that such waivers were unlawful). With that understanding in mind, the parties designed their arbitration process to serve their needs in arbitrating labor disputes. The arbitration process negotiated by the Union and the Employer (i.e., the parties) works well to resolve labor disputes raised under the CBA, but it is woefully inadequate to vindicate an employee's statutory rights. It is therefore unenforceable, and the Motion to Dismiss should be denied.

IV.     CONCLUSION

SEIU Local 615, the Intervenor-Plaintiff, urges this Court to deny Defendants' Motion to Dismiss. The question of whether the CBA waives an individual member's right to litigate his statutory discrimination claims is a question of contract interpretation that is appropriately left for the arbitrator to decide. Because the Union has an arbitration pending on the interpretation of the CBA, this Court should decline to dismiss the suit on this ground unless and until the arbitrator finds that the Union and Employer did intend for the grievance and arbitration provision to be the employees' sole and exclusive means of vindicating statutory rights. If the Court does not stay its hand before arbitral determination of the question, the Union urges the Court to find there is no clear and unmistakable waiver in the CBA and that even if the CBA did

contain such a waiver, the agreement would be nonetheless unenforceable as a substantive waiver of the employee's statutory rights to challenge unlawful discrimination in the workplace.

        Respectfully submitted,

        SERVICE EMPLOYEES INTERNATIONAL UNION,
        LOCAL 615

        By its attorneys,

        */s/ James A.W. Shaw*
        Indira Talwani, Esq., BBO# 645577
        James A.W. Shaw, Esq., BBO# 670993
        Louis A. Mandarini, III., Esq., BBO# 669293
        SEGAL ROITMAN, LLP
        111 Devonshire St., 5th Floor
        Boston, MA 02109
        Phone: (617) 742-0208
        Fax: (617) 742-2187
        E-mail: jshaw@segalroitman.com

Dated: July 23, 2009

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 23, 2009.

        */s/ James A.W. Shaw.*