UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10587-GAO

FIDEL SOLANO,
Plaintiff,

v.

ALLIED BARTON, INC., ALLIED SECURITY HOLDINGS, LLC, THE BLACKSTONE GROUP, L.P., CHARLES CLARKE, ROBERT DICKSON, EDWARD SILVY, and DAVID SILVY,
Defendants.

ORDER
September 30, 2011

O'TOOLE, D.J.

The plaintiff, a former employee of AlliedBarton Security Services, LLC ("AlliedBarton"), filed suit against AlliedBarton and several of its managers. The plaintiff's original Complaint alleged seven claims, four of which were previously dismissed. What remains are the plaintiff's claims of age discrimination (Count I), disability discrimination (Count II), and retaliation under the American with Disabilities Act ("ADA") (Count III), as well as any comparable state statutory claims. The defendants filed a joint motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

## I.     Background

AlliedBarton is a security firm that provides services and personnel to clients nationwide. AlliedBarton hired the plaintiff in November, 2003. At the time of his hire, the plaintiff did not have any disability-based work restrictions. From 2004 through 2009 AlliedBarton provided

security services to Harvard University and employed approximately 250 security officers, including the plaintiff, at that location.

The plaintiff's health deteriorated over the course of his employment. In September 2005 and in January 2006, the plaintiff suffered heart attacks while he was at work. In May 2006 the plaintiff had a car accident and was out of work for approximately three months. In May 2007 the plaintiff also suffered two minor strokes, one while he was working and one on his way to work. Because of his injuries, in July 2006 the plaintiff was medically cleared to work with certain medical restrictions.

The plaintiff's doctors provided AlliedBarton with notice of his medical condition and delineated the restrictions to be placed on his job duties. Specifically, the plaintiff could only perform sedentary work and could not do work that required him to walk extended distances, stand for long periods of time, or climb stairs. Because of the plaintiff's work restrictions, some of the individual defendants met with the plaintiff in August 2006 to determine the positions suitable for the plaintiff. During this meeting, the defendants informed the plaintiff that the only available position for him was an overnight shift as an ID checker that would become available in September 2006. In the meantime, the plaintiff was given the option to fill occasional temporary openings consistent with his physical limitations.

In September 2006, the plaintiff started working the overnight shift as an ID checker. On December 12, 2006, the plaintiff's doctor informed AlliedBarton that the plaintiff was unable to continue working the overnight shift. AlliedBarton then transferred the plaintiff to another position at the Countway Library. His job responsibilities at the library included: checking the identification of individuals entering the library, signing individuals in and out, and checking bags of those exiting the premises.

Between August 2007 and February 2008, the plaintiff violated AlliedBarton's work rules on four different occasions.[1] On or about February 26, 2008, the plaintiff had a meeting with the defendants to discuss the aforementioned violations. The plaintiff alleges that during this meeting Robert Dickson told him that "if [he] were too sick to work, then [he] shouldn't be working, period." (Def.'s Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment, Ex. C (dkt. no. 51).)

Subsequently, Dickson placed the plaintiff on suspension and the plaintiff was ultimately terminated. The union filed a grievance on behalf of the plaintiff, which was denied. The termination proceeded to arbitration and on February 6, 2009, the arbitrator found that there was no just cause for the plaintiff's termination and ordered that he be reinstated with back pay. AlliedBarton asked the union for a letter from the plaintiff's physician prior to reinstating him. On February 23, 2009, AlliedBarton received the medical letter, which outlined work restrictions that the plaintiff would need:

> He is unable to work the overnight or the late shift. He is unable to crawl, can't walk more than 50 paces at a time. He can only stand for ten minutes at a time, and can't sit for more than one hour. He is only able to work 16 hours per week, no more than 8 hours in a shift and they can't be consecutive, he also must have 1 hour meal break for every shift he works. With his condition he must have a have [sic] handicap parking. He must have all of these restrictions in order to work.

Rather than reinstating the plaintiff, the defendants argued[2] to the arbitrator that reinstatement was an improper remedy in light of the deterioration in the plaintiff's physical

---

[1] The violations cited as reasons for his termination include allowing individuals to leave the library without checking their bags, leaving his post to get food, eating at his post, and reading a newspaper at his post.

[2] It appears that AlliedBarton exchanged correspondence with the arbitrator after the remedy had been issued.

condition. The plaintiff alleges that his condition had not worsened; the only change was that his work hours had decreased. Ultimately, the plaintiff was never reinstated.

The plaintiff argues that the defendants terminated him because of his disability. Additionally, although not explicitly pled, the plaintiff apparently contends that the defendants' failure to reinstate him was retaliatory.

## II. Discussion

### A. Applicable Framework

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party asserts that no genuine issue of material fact exists, the opposing party has the burden to point to specific facts demonstrating that there is a trial-worthy issue. Calero-Cerezo v. U.S. Dep't. of Justice, 355 F.3d 6, 19 (1st Cir. 2004); see also Faiola v. APCO Graphics, Inc., 629 F.3d 43, 46 (1st Cir. 2010). Facts are material when they have the potential to change the outcome of the case under the governing law if found favorably to the non-moving party. Calero-Cerezo, 355 F.3d at 19. Even in employment discrimination cases where motive or intent is at issue, summary judgment is warranted if the non-moving party "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st. Cir. 2000) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). However, if the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in his favor, a factfinder must be allowed to determine which version of the facts is most compelling. Calero-Cerezo, 355 F.3d at 19.

The plaintiff is entitled to have his complaint "liberally construe[d]" as a pro se plaintiff. Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994); see also Wightman v. Bureau of Alcohol, Tobacco & Firearms, 755 F.2d 979, 983 (1st Cir. 1985). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

B.  Disability Discrimination

Although the plaintiff does not explicitly plead that his disability discrimination claim falls under the umbrella of the American with Disabilities Act ("ADA") and its state counterpart, Chapter 151B of the Massachusetts General Laws, the Court construes his claim as such. The plaintiff appears to base his claim of disability discrimination upon two distinct theories of liability: disparate treatment and failure to accommodate his disabilities.

To prove disparate treatment under both Title I of the ADA, 42 U.S.C. § 12101 et seq. and M.G.L. Chap. 151B, the plaintiff must first show that: (1) he suffers from a disability as defined by the ADA and Chapter 151B; (2) he was nevertheless able to perform the essential functions of his job, with or without reasonable accommodation; and (3) the defendants took an adverse employment action against him because of his protected disability. Faiola v. APCO Graphics, Inc., 629 F.3d 43, 47 (1st Cir. 2010); see also Caroll, 294 F.3d at 237. As to the plaintiff's reasonable accommodation claim, he needs to further show that the defendants, despite knowing of his alleged disability, did not reasonably accommodate it. Caroll, 294 F.3d at 237. Analyses under the ADA and M.G.L. Chap. 151B are identical. Faiola, 629 F.3d at 47 n.2.

Once the plaintiff has established a prima facie case of disability discrimination, the burden shifts to AlliedBarton to put forth a legitimate, non-discriminatory reason for the

termination. Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 105 (1st Cir. 2005) ("Tobin I") (citing McDonnell-Douglas v. Green, 411 U.S. 792, 802 (1973). Further, the defendants must "produce credible evidence" to show the non-discriminatory reason was the actual cause for the termination. Id. If the defendants are able to offer a legitimate, non-discriminatory reason, the initial inference of discrimination "dissolves." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991). The burden then shifts back to the plaintiff to prove that the defendants' reasoning is mere pretext for discrimination. Tobin I, 433 F.3d at 105. The burden of proving the existence of unlawful discrimination rests at all times with the plaintiff. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143 (2000).

The defendants concede that the plaintiff is able to establish a prima facie case of disability discrimination with regard to his initial termination. However, they argue that they had legitimate non-discriminatory reasons for terminating the plaintiff. Specifically, the defendants point to four instances where the plaintiff violated the work rules of his position. The plaintiff was issued written warnings, eventually suspended, and then terminated. At all times, the defendants followed the procedures laid out in their most recent employee handbook. The defendants have provided clear evidence of the plaintiff's poor performance and violations of the work rules. Thus, the determination ultimately rests on whether the plaintiff can establish that these performance-based reasons for his termination are mere pretext for disability discrimination. It is not enough to question the defendants' justification; rather, the plaintiff must "elucidate specific facts which would enable a jury to find that the reason given in not only a sham, but a sham intended to cover up the defendants' real motive." Mesnick, 950 F.2d at 824. The plaintiff does not have to produce a "smoking gun," but an "aggregate package of proof" offered to establish evidence of pretext. Id.

The plaintiff argues that other AlliedBarton employees regularly violated work rules and were not disciplined. This acquiescence to other employees' violations indicates, he says, that the defendants targeted the plaintiff and terminated him because of his disability. The problem is that while he makes the argument, he has failed to offer admissible evidence that would create a genuine factual dispute for trial. There is no evidence in the record concerning patterns of disciplinary action. There is no evidence on which a trier of fact could evaluate the defendants' actions with respect to other employees or to compare those actions with the action taken against the plaintiff. Without such evidence, the plaintiff is unable to overcome the defendant's proffer of a legitimate, non-discriminatory reason for the termination. See Mesnick, 950 F.2d at 824-25, and Tobin I, 433 F.3d at 105-06. In short, there is no evidence to support a finding of pretext, and the plaintiff is unable to sustain his burden of proof.

As to a claim of failure to accommodate, the record is clear that AlliedBarton made several adjustments to the plaintiff's work responsibilities over the course of his employment as an accommodation to his physical needs. There is no basis whatsoever for connecting AlliedBarton's original termination of the plaintiff's employment with a failure to accommodate.

AlliedBarton did balk at reinstating the plaintiff after receiving the medical letter quoted above. The record is not well developed concerning events after February 2009, although there is some evidence of discussions among the plaintiff, the defendants, and union representatives about the plaintiff's status, suggesting there was some degree of "interactive process" concerning finding an accommodation for the plaintiff even as late as July 2009. See Tobin I, 433 F.3d at 108. In any event, it can fairly be said that the plaintiff has not offered admissible evidence to show that there is a triable issue of fact concerning a claim of failure to accommodate the restrictions requested in the February 2009 medical letter. In particular, it is the plaintiff's burden

7

to show that any accommodation would be a "reasonable" one. See Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 136 (1st Cir. 2009) ("Tobin II"). Certainly the severity of the restrictions outlined as necessary in the February 2009 medical letter raise a substantial question whether a reasonable accommodation was available. The plaintiff does not offer evidence that could persuade a trier of fact on that issue. In short, any claim of failure to accommodate post-February is simply not supported by evidence proffered in the summary judgment record.

### C. Age Discrimination

The plaintiff alleges an Age Discrimination in Employment Act ("ADEA") claim, which fails as a matter of law. Not only has the plaintiff failed to proffer evidence supporting a potential age discrimination claim, but in his deposition testimony, he affirmed that he does not have any reason to believe that any of AlliedBarton's actions were motivated by his age. Consequently, the plaintiff's age discrimination claim is dismissed.

### D. Retaliation

The ADA prohibits retaliation against "any individual because such individual has opposed any act or practice made unlawful" by the ADA. 42 U.S.C. § 12203(a). A plaintiff need not succeed on a claim of disability discrimination to bring a claim of retaliation. Wright v. CompUSA, Inc., 352 F.3d 472, 477 (1st Cir. 2003). To establish a retaliation claim, a plaintiff must show that (1) he engaged in protected conduct, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse employment action. Soileau v. Guilford of Main, Inc., 105 F.3d 12, 16 (1st Cir. 1997). A request for an accommodation is a protected activity for the purposes of establishing a claim of retaliation under the ADA. Wright, 352 F.3d at 478.

There is no evidentiary support for a possible claim of retaliation for the original termination. There was no prior "protected conduct" by the plaintiff that could have been the impetus for a retaliatory motive on the part of the defendants. Any requests for accommodations had been acceded to.

It is conceivable that it could be claimed that the defendants' refusal to reinstate the plaintiff in 2009 was in retaliation for the request for restrictions contained in the February medical letter. But there is no evidence in the record to suggest that the defendants refused to reinstate the plaintiff <u>because he asked for accommodations</u>. The inference the record supports is that they refused to reinstate him <u>because they thought the requested accommodations were unreasonable</u>. As noted above, if that was the defendants' position, it might (with proper evidentiary grounding) support a claim of direct discrimination by failure to accommodate. The facts do not support a separate theory of retaliation.

### III. Conclusion

For the foregoing reasons, the defendants' Motion for Summary Judgment is GRANTED. Judgment shall enter in favor of the defendants.

It is SO ORDERED.

    /s/ George A. O'Toole, Jr.
United States District Judge